**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SPRINT CORPORATION,
6200 Sprint Parkway
Overland Park, KS 66251;

Plaintiff,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR,
1849 C Street, N.W.
Washington, D.C. 20240;

SALLY JEWELL, in her official capacity as Secretary of the United States Department of the Interior,
1849 C Street, N.W.
Washington, D.C. 20240;

BUREAU OF LAND MANAGEMENT,
1849 C Street, N.W.
Washington, D.C. 20240;

NEIL KORNZE, in his official capacity as Director of the Bureau of Land Management,
1849 C Street, N.W.
Washington, D.C. 20240;

INTERIOR BOARD OF LAND APPEALS,
801 N. Quincy Street
Arlington, VA 22203;

Defendants.

Case No.

# COMPLAINT

Plaintiff Sprint Corporation, formerly known as Sprint Nextel Corporation, ("Sprint") submits this complaint against the Defendants, the United States Department of Interior ("Department"), Sally Jewell in her official capacity as Secretary of the Department, the Bureau of Land Management ("BLM"), Neil Kornze in his official capacity as Director of BLM, and the Interior Board of Land Appeals ("IBLA"), and states and alleges as follows:

## INTRODUCTION

1. Sprint brings this action under the Administrative Procedure Act, 5 U.S.C. §§ 701–706, seeking judicial review of the IBLA's decision in *Sprint Corporation*, 186 IBLA 132 (2015) ("IBLA Decision"), a copy of which is attached as Exhibit A. The IBLA Decision partly affirms a decision by BLM that Sprint trespassed on public lands. It constitutes final agency action by the Department.

2. The underlying administrative dispute concerns Sprint's use of the Orogrande Communications Site in Otero County, New Mexico ("Communications Site"), which is located on public land and is administered by BLM.

3. In 2003, pursuant to a sublease authorized by BLM, Sprint installed certain telecommunications equipment, consisting of outdoor cellular cabinets, on the Communications Site.

4. Over the next ten years, BLM had actual knowledge that Sprint was using the Communications Site; it charged and collected annual rent for Sprint's use; it repeatedly found Sprint's use to be in compliance with applicable laws and regulations; it granted express authorizations for Sprint's use; and it allowed Sprint to continue its use without objection or any indication that Sprint was in trespass.

5. In 2013, BLM reversed position and determined that Sprint had never been authorized to use the Communications Site. BLM issued trespass decision NMNM 130476 ("Trespass Decision"), finding Sprint in trespass for the entire period, imposing fees and penalties of $86,931.96, and requiring Sprint to remove its equipment from the Communications Site. The Trespass Decision was premised on the retroactive application of 43 C.F.R. § 2806.36(b), a regulation adopted in 2005. Sprint appealed the Trespass Decision to the IBLA.

6. The IBLA correctly reversed the Trespass Decision, in part, on grounds that BLM erred by retroactively applying the regulation to the period before 2005. It also correctly reversed BLM's trespass decision in NMNM 130477, a separate but related case involving Sprint's use of other equipment on the Communications Site, which the IBLA had consolidated with NMNM 130466 on

appeal. Sprint does not seek review of or challenge either of these portions of the IBLA Decision.

7. The IBLA otherwise affirmed the Trespass Decision as to the cellular cabinets. Sprint seeks a judgment setting aside this remaining portion of the IBLA Decision and remanding with instructions that the IBLA reverse the Trespass Decision in its entirety. This relief is warranted because, as described in this complaint, Defendants' actions are arbitrary, capricious, an abuse of discretion, contrary to law, procedurally improper, and unsupported by substantial evidence.

**PARTIES**

8. Sprint is a corporation headquartered in Overland Park, Kansas. Its operating subsidiaries, including the owner and operator of the facilities at issue in this case, offer a range of telecommunications products and service—including cellular and wireless services—to individual consumers, businesses, and the government under the "Sprint" name and other brand names. Sprint is the parent company of Alamosa Properties, a Texas limited liability company, which was previously a Texas limited partnership ("Alamosa"). Although Alamosa owned the equipment that was allegedly trespassing on the Communications Site, BLM issued the Trespass Decision to Sprint.

9. The Department is an agency of the United States of America, and is charged with management of the country's natural and cultural resources.

10. BLM is a federal agency within the Department, which administers and manages certain public lands in the United States, including the Communications Site at issue in this action.

11. The IBLA is a federal agency within the Department, which reviews appeals from decisions of BLM and other agencies within the Department, and which issues final decisions for the Department.

12. Sally Jewell, who is sued in her official capacity as the Secretary of the Department, is charged by law with carrying out the duties, responsibilities, and decisions of the Department.

13. Neil Kornze, who is sued in his official capacity as Director of BLM, is charged by law with carrying out the duties, responsibilities, and decisions of the BLM.

## JURISDICTION AND VENUE

14. Jurisdiction exists under 28 U.S.C. § 1331 (federal question); 28 U.S.C. §§ 2201–02 (declaratory judgment); and 5 U.S.C. §§ 701–706 (judicial review of agency action).

15. Venue lies in this judicial district under 28 U.S.C. § 1391(e)(1) because Defendants are officers, employees, or agencies of the United States that reside in the District of Columbia.

16. Sprint has exhausted its administrative remedies and is not required to pursue additional administrative remedies before seeking and obtaining judicial relief.

17. The IBLA Decision is final agency action under the Administrative Procedure Act. *See* 43 C.F.R. 4.403 ("A decision of the [Interior] Board [of Land Appeals] shall constitute final agency action and be effective upon the date of issuance, unless the decision itself provides otherwise.").

18. An actual, justiciable controversy has arisen and now exists between the parties with regard to their respective rights and duties, and the proper construction and application of the federal statutes and regulations cited in this complaint.

## FACTUAL BACKGROUND

### BLM Granted A Prime Lease for the Communications Site

19. On December 13, 1990, BLM issued Right-Of-Way Grant/Temporary Use Permit NMNM 83847 ("Prime Lease") to New Mexico RSA 6 Limited Partnership ("RSA") for the Communications Site.

20. The Prime Lease was issued under Title V of the Federal Land Policy Management Act ("FLPMA"), 43 U.S.C. § 1761.

21. The Prime Lease granted RSA the "right to construct, operate, maintain, and terminate a communications site and access road on public land," described as "T. 22 S., R. 8 E., NMPM sec. 11, N1/2SW1/2, SW1/2SW1/4."

22. The Special Stipulations attached to the Prime Lease required RSA to obtain written approval from BLM's Authorized Officer before subleasing any part of the Communications Site.

23. On October 25, 2000 RSA assigned the Prime Lease to Crown Castle GT Company, LLC ("Crown"). On December 18, 2000, BLM issued a Decision approving the assignment, subject to the terms and conditions of the original Prime Lease.

24. Beginning in August 2000 and continuing through January 2001, Crown made several requests to BLM for authorization to sublease the Communications Site.

25. On January 24, 2001, BLM approved Crown's request and issued a Decision amending the Prime Lease to include subleasing rights.

**Crown Entered Into A Sublease With Alamosa**

26. On January 24, 2003, pursuant to the subleasing authorization, Crown and Alamosa entered into a Tower License ("Alamosa Sublease").

27. The Alamosa Sublease authorized Sprint to install, operate, and maintain certain antennas and other equipment on the Communications Site. In

particular, it subleased to Sprint an area of ground space ("Open Equipment Area"), and it authorized Sprint to install outdoor equipment cabinets ("Alamosa Cabinets") in the Open Equipment Area subject to certain provisions.

28. The BLM-authorized Alamosa Sublease is an authorization for Sprint's use of the Communications Site.

**Sprint Installed Equipment Pursuant To The Alamosa Sublease**

29. Pursuant to its rights under the BLM-authorized Alamosa Sublease, Sprint installed and began operating telecommunications equipment in the right-of-way at the Communications Site. As relevant to this complaint, Sprint installed the Alamosa Cabinets in the Open Equipment Area.

30. From 2003 to 2013, Crown reported to BLM on at least an annual basis that Sprint was a tenant of the Communications Site.

**BLM Signed An Estoppel Confirming That The Site Was In Compliance**

31. On December 20, 2004, Crown asked BLM to countersign an estoppel letter, confirming that Crown had a lease for the Communications Site and that it was in compliance with its lease ("Estoppel Letter"). A prospective lender had required Crown to obtain the Estoppel Letter as a condition of receiving a loan.

32. When BLM received this request, it had actual knowledge of the fact that Sprint was a tenant of the Communications Site and that Sprint had equipment in the Open Equipment Area.

33. On January 19, 2005, BLM's Assistant Fieldman, Tom Sanders, countersigned the Estoppel Letter. Notably, Mr. Sanders struck out several provisions in the Estoppel Letter, but kept the provision expressly representing that Crown was not in default under the Prime Lease and that "no event or condition has occurred or exists which, with notice or the passage of time or both, would constitute a default . . . ."

34. Had Sprint been operating on the Communications Site without a valid authorization, Crown would have been in default under the Prime Lease.

35. The Estoppel Letter ratified BLM's authorization of Sprint's use of the Communications Site.

**BLM Renewed The Prime Lease And Approved Sprint As A Current Tenant**

36. On September 12, 2005, Crown submitted an application to renew the Prime Lease. The application stated that the renewal is desired "in order to allow our *current tenants* to continue providing wireless service to the surrounding area." (Emphasis added.)

37. On November 28, 2005, BLM's Assistant Field Manager signed a Categorical Exclusion Review/Decision approving the proposed renewal. The Decision provided that "[r]enewal would allow *current tenants* to continue providing wireless service to the surrounding area." (Emphasis added.) BLM took this action with full knowledge of Sprint's use of the Communications Site.

38. On December 8, 2005, BLM mailed Crown an offer to renew the Prime Lease.

39. On December 13, 2005, the United States, acting through BLM, and Crown entered into a renewed Communications Use Lease ("Renewed Prime Lease").

40. The Renewed Prime Lease continued to authorize Crown to rent space to customers and tenants, and required that Crown provide the Authorized Officer with an annual inventory, listing all tenants and customers. In addition, pursuant to the Renewed Prime Lease: "[a]ll development, operation and maintenance of the authorized facility, improvements and equipment located in the property must be in accordance with stipulations in the communications site plan approved by the authorized officer."

41. The Renewed Prime Lease is an authorization for Sprint's use of the Communications Site.

**BLM Issued An Approved Communications Site Plan Expressly Authorizing Sprint's Equipment**

42. Consistent with the Renewed Prime Lease, BLM issued an Orogrande Communications Site Plan on July 25, 2008. It was approved and signed by Tom Sanders, Acting District Manager. On August 8, 2008, BLM mailed a copy of the "Approved Communications Site Plan" for the Communication Site to all Communication Facility Managers and Owners.

43. The Approved Communications Site Plan applies to NMNM 083847, the underlying right-of-way at issue in this action. It specifically provides that: "The plan will be used by BLM officials administering communications uses at Orogrande."

44. The Approved Communication Site Plan expressly authorizes all of the equipment that Sprint had on the Communications Site, specifically including the Open Equipment Area and the Alamosa Cabinets. Sprint's equipment is shown on the Site Map and Appendix A, and is listed in Appendix B as "Authorized Facilities." The Approved Communications Site Plan includes detailed diagrams, site plans, and photographs of the Alamosa Cabinets, and acknowledges that Sprint is using and operating that equipment.

45. BLM has not revoked or modified its approval of the Approved Communications Site Plan.

46. The Approved Communications Site Plan is an authorization for Sprint's use of the Communications Site.

**Crown Complied With The Requirement To Notify BLM That Sprint Was Using The Communications Site**

47. As required by the Prime Lease, Renewed Prime Lease, and 43 C.F.R. § 2806.31, Crown submitted annual inventories to BLM listing the tenants at the Communications Site.

48. From 2003 through 2013, the annual inventory listed Sprint as a tenant of the Communications Site for cellular telephone and/or internet uses.

49. During this ten-year period, BLM had actual knowledge of Sprint's use of the Communications Site pursuant to the authorized Alamosa Sublease. BLM never objected to Sprint's use or claimed that Sprint was in trespass until it initiated trespass proceedings in 2013.

**BLM Billed And Collected Rent For Sprint's Use Of The Communications Site**

50. Sprint paid Defendants for the fair market value of its use of the Communications Site during the relevant period.

51. Each year from 2003 through 2010, BLM prepared rental calculation worksheets reflecting that Sprint was a "tenant" and/or "additional use/occupant" of the Communications Site. BLM then set a scheduled rental rate for Sprint's use of the Communications Site. In several of these years, the worksheets expressly acknowledged that Sprint did not have a separate right-of-way authorization from BLM. (The rental calculation worksheets for 2011–2013 are missing from BLM's Administrative Record.)

52. During this period, BLM billed and collected rent for Sprint's use of the Communications Site, while acknowledging that Sprint did not have separate authorizations. BLM never objected to Sprint's use or notified Sprint that it was in trespass until it initiated trespass proceedings in 2013.

## ADMINISTRATIVE TRESPASS PROCEEDINGS

### BLM Conducted An Audit Of The Communication Site

53. On April 23, 2013, BLM realty specialist Carl Krause conducted an audit of the Communications Site. The audit purportedly "discovered that [Sprint] had communications equipment at the Orogrande South Communications Site." According to the audit, BLM's internal database and Master Title Plats did not reveal an authorization for this communications equipment. The results of the audit were summarized in an Initial Report of Unauthorized Use, dated April 29, 2013.

54. Memos from Carl Krause, dated April 24, 2013, attach photographs and drawings of the equipment that was purportedly trespassing on the Communications Site, including the Open Equipment Area and Alamosa Cabinets.

55. Yet BLM also prepared a Compliance Report for the audit, dated April 24, 2013, which reached the opposite conclusion. The Compliance Report found that the Communications Site was in compliance and recommended that BLM accept compliance. It expressly noted: "All uses reported correctly and site is well maintained. No deficiencies noted." The Compliance Report also includes photographs of the equipment at the Communications Site, including photographs of "equipment belonging to Sprint" (i.e., the Alamosa Cabinets) (Photo D). It did not indicate that this equipment was in trespass or non-compliant.

**BLM Issued A Trespass Notice to Sprint**

56. On May 29, 2013, BLM issued a Trespass Notice to Sprint.

57. The Trespass Notice states that BLM "has made an initial investigation and evidence indicates that your company is in trespass on public lands." Specifically, during an audit of the Communications Site, "it was discovered that equipment that we believe belongs to your company is in operation at this site." The allegation that the BLM "discovered" equipment belonging to Sprint at the site is inconsistent with the administrative record, which shows that BLM had known about the equipment since it was installed a decade before, and that BLM had repeatedly acknowledged that the equipment was authorized on the site, including most recently in the 2008 Approved Communications Site Plan.

58. The Trespass Notice did not specifically describe the equipment that was allegedly trespassing or where on the Communications Site it was located, but it did describe the impacted lands as: "T. 22 S., R. 8 E., NMPM sec. 11, SE¼NE¼SW¼," the same lands on which Sprint had been operating under the Alamosa Sublease.

59. The Trespass Notice stated that Sprint's action was an unauthorized use under 43 CFR § 2808.10 and could subject Sprint to fines and penalties under 43 CFR § 2808.11. It demanded that Sprint present any evidence that Sprint was not responsible for the alleged trespass to BLM within 30 days.

**Sprint Responded To The Trespass Notice**

60. On July 2, 2013, Sprint responded to the Trespass Notice. Sprint explained that it was not trespassing under BLM regulations because it was occupying the Communications Site with BLM's knowledge and consent and pursuant to a BLM authorization.

61. Sprint also noted that it was "eager to cooperate with BLM to resolve this matter expeditiously" and it offered to address BLM's concerns by assigning any equipment shelters it did in fact own to its landlords, as this would eliminate the alleged basis for the trespass.

**BLM Issued Trespass Decisions Against Sprint**

62. On July 23, 2013, BLM issued its Trespass Decision against Sprint in NMNM 130476. The Trespass Decision did not describe the equipment that BLM had determined to be in trespass; nor did it describe the location of that equipment on the Communications Site. Rather, the Trespass Decision simply asserted that Sprint's "actions constitute an unauthorized use" of the Communications Site.

63. The Trespass Decision was premised on 43 CFR § 2808.10 (prohibiting unauthorized use of public land); and 43 CFR § 2806.36(b) (requiring the owner of a building, equipment shelter, or tower on public lands for communications purposes to obtain an authorization, even if the owner is also a tenant in someone else's facility).

64. The Trespass Decision required Sprint to resolve the unauthorized use within 90 days by removing its equipment from the Communications Site and rehabilitating and restoring the Communications Site.

65. The Trespass Decision also required Sprint to pay a total of $86,931.96 within 30 days. According to the Trespass Decision and enclosed Trespass Cost Calculation Sheet, this figure included $1,661.02 for administrative investigation costs, $42,635.47 for rental costs for 2003 through 2013, and $42,635.47 for penalties for 2003 through 2013.

**Sprint Timely Appealed And Paid The Trespass Fees Under Protest**

66. On August 27, 2013, Sprint paid the Bill for Collection of trespass costs under protest.

67. On August 27, 2013, Sprint timely filed its Notice of Appeal of the Trespass Decisions to the IBLA.

68. The IBLA docketed the appeal and ordered it consolidated with an appeal in a related trespass case (NMNM 130477) involving other equipment operated by Sprint on the Communications Site. Sprint then filed a Statement of Reasons in support of its appeal, BLM filed an Answer, and Sprint filed a Reply Brief.

69. On September 9, 2015, the IBLA issued its decision in the consolidated appeals, which is reported as *Sprint Corporation*, 186 IBLA 132 (2015).

70. The IBLA Decision correctly reversed the trespass decision in the related case in its entirety, finding that because Sprint did not own the equipment at issue, it could not be in trespass. Sprint does not challenge or seek judicial review of this portion of the IBLA Decision.

71. The IBLA Decision also correctly reversed, in part, the Trespass Decision at issue in this action, and it remanded for a new calculation of damages. The IBLA held that BLM could not collect damages for the alleged trespasses that occurred from 2003 through 2005 because the regulation BLM relied on, 43 CFR § 2806.36(b), was not adopted until 2005 and did not apply retroactively. Sprint does not challenge or seek review of this portion of the IBLA Decision.

72. The IBLA Decision affirmed the Trespass Decision as to Alamosa Cabinets after 2005. Sprint seeks judicial review of only this portion of the Trespass Decision.

## LEGAL FRAMEWORK

73. The Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.*, governs the management of public lands administered by BLM. FLPMA authorizes BLM to grant rights-of-way over public lands for

communications sites. (*See* 43 U.S.C. § 1761.) FLPMA also provides that the United States should receive fair market value of the use of public lands unless otherwise provided for by statute. (*See* 43 U.S.C. § 1701(a)(9).)

74. The Department and BLM have adopted regulations that apply to rights-of way issued under FLPMA for communications sites. The regulations in effect when BLM authorized the Alamosa Sublease and when Sprint installed its equipment were those adopted in 1980 (45 Fed. Reg. 44526), as later amended in 1982 (47 Fed. Reg. 38805), 1986 (51 Fed. Reg. 6543), 1987 (52 Fed. Reg. 25808), 1989 (54 Fed. Reg. 25854), and 1995 (60 Fed. Reg. 57070) ("Effective Regulations").

75. The Effective Regulations did not require Sprint to have a separate authorization for its use of the Communications Site, and in particular, did not contain an analog to present-day 43 CFR § 2806.36, which BLM and the IBLA relied on issuing their decisions.

76. To the contrary, the Effective Regulations included a special provision exempting holders of communications rights-of-way from the ordinary requirement to obtain BLM's written consent before subleasing to other users. *See* 43 CFR § 2801.1-1(f), which provides:

> The holder of a right-of-way grant may authorized other parties to use a facility constructed, except for roads, on the right-of-way with the prior written consent of the authorized officer and charge for such use.

> . . . .
>
> However, the holder of a right-of-way grant for communication purposes may authorize other parties to use a facility, without prior written consent of the authorized officer, if so provided by terms and conditions of the grant.

77. Additionally, under the Effective Regulations, "[t]enants occupying space in the facility under terms of the holder's right-of-way authorization will not be required to have a separate BLM authorization." (43 CFR § 2803.1-2(d)(6).) The Effective Regulations define "facility" as an:

> [I]mprovement constructed or to be constructed or used within a right-of-way pursuant to a right-of-way grant. For purposes of communication sites rights-of-way, facility means the building, tower, and/or other related incidental improvements authorized under terms of the right of way grant.

(43 CFR § 2800.0-5(j).)

78. In 2005, several years after BLM had authorized the Alamosa Sublease and Sprint had installed its equipment at the Communications Site, BLM adopted wholesale revisions to its right-of-way regulations (the "2005 Regulations"). (70 Fed. Reg. 20970.) The 2005 Regulations added 43 CFR § 2806.36, which BLM and the IBLA relied on as the legal basis for their decisions. 43 CFR § 2806.36 provides:

> (a) You may have your own authorization, but BLM does not require a separate grant or lease for tenants and customers using a facility authorized by a BLM grant or lease that contains a subleasing provision. BLM charges the facility owner or facility manager rent based on the highest value use within the facility (including any tenant or customer use authorized by a separate grant or lease) and 25 percent of the rent from the rent schedule for each

> of the other uses subject to rent (including any tenant or customer use a separate grant or lease authorizes and the facility owner's use if it is not the highest value use).
>
> (b) If you own a building, equipment shelter, or tower on public lands for communication purposes, you must have an authorization under this part, even if you are also a tenant or customer in someone else's facility.
>
> (c) BLM will charge tenants and customers who hold their own grant or lease in a facility, as grant or lease holders, the full annual rent for their use based on the BLM communication use rent schedule. BLM will also include such tenant or customer use in calculating the rent the facility owner or facility manager must pay.

This was a new provision; it had no analog in the Effective Regulations. The 2005 Regulations became effective on June 21, 2005. (*See* 70 Fed. Reg. 20970 [“*Effective Date:* This final rule is effective June 21, 2005”].) The 2005 Regulations do not purport to be retroactive, and nothing in the final rule suggests that they were intended to be retroactive.

## FIRST CAUSE OF ACTION

**(Violations of the APA)**

79. Sprint incorporates by reference every allegation in this complaint.

80. The APA provides that a court must hold unlawful and set aside agency actions, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) contrary to constitutional right, power, privilege, or immunity, (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, (D) without observance of procedure required by law, jurisdiction, authority, or limitations, or

short of statutory right, or (E) unsupported by substantial evidence. (5 U.S.C. § 706(2).)

81. The IBLA Decision constitutes final agency action of the Department.

82. Without limitation, Defendants violated the APA follows:

a. Defendants unlawfully demanded and received more than the fair market value of Sprint's use of the Communications Site, in excess of their statutory authority under FLPMA. As applied by Defendants, 43 CFR 2806.36(b) violates FLPMA because it allows BLM to collect *two rental payments* from Sprint for the *same use*— first under the authorized sublease, and second through an individual right-of-way authorization. FLPMA only authorizes BLM to receive *fair market value* for the use of public lands, not *more than fair market value*.

b. Defendants erred by failing to recognize the express authorizations that BLM granted for Sprint's use of the Communications Site, including without limitation, the Alamosa Sublease, the Estoppel Letter, the Renewed Prime Lease, and the Approved Communications Site Plan. These actions are arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence.

c. Defendants were estopped from finding Sprint in trespass based on BLM's representations to Sprint, and Sprint's reasonable reliance on those representations. For ten years, BLM had actual knowledge of Sprint's use of the

Communications Site; it charged and collected annual rent for Sprint's use; it repeatedly found Sprint's use to be in compliance with applicable laws and regulations; it granted express authorizations for Sprint's use; and it allowed Sprint to continue its use without objection. BLM also represented to Sprint that its use was authorized in connection with the Prime Lease, the Alamosa Sublease, the Estoppel Letter, the Renewed Prime Lease, and the Approved Communications Site Plan. At no time during this period did BLM revoke or disavow any of its authorizations, nor inform Sprint that it did not have a valid authorization to use the site. Sprint reasonably relied on BLM's representations when it installed and then continued to use its equipment on the Communication Site. Had BLM not made misrepresentations in its official documents and course of conduct with Sprint, Sprint would have been able to apply for and obtain a separate authorization for the Communications Site much earlier, thereby avoiding years of alleged trespasses. BLM's misrepresentations prevented Sprint from doing so. Defendants are now estopped from finding Sprint in trespass, and their actions in the administrative proceedings were arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

d. Defendants erred by failing to apply the Effective Regulations to Sprint's use of the Communications Site. Under the Prime Lease and the Effective Regulations, Sprint did not need a separate authorization from BLM

when it installed its equipment pursuant to the Alamosa Sublease. Defendants' actions in failing to apply the correct regulations are arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

e. Defendants erred by applying the 2005 Regulations to equipment that was authorized and installed before the effective date of the regulation. The 2005 Regulations do not purport to be retroactive, and nothing in the final rule suggests that they were intended to be retroactive. Defendants' actions in applying the incorrect regulations are arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

f. Even if the 2005 Regulations did apply retroactively, Defendants misapplied them. Under the 2005 Regulations, authorized tenants in a "facility" do not need their own authorizations. (See 43 CFR§ 2806.36.) The regulations define "facility" broadly, such that it includes any "improvement or structure, whether existing or planned, that is or would be owned and controlled by the grant or lease holder within a right-of-way." (43 CFR § 2801.5.) In this case, the "facility" is the entire Communications Site, which BLM authorized in the Prime Lease. Accordingly, Sprint did not need its own authorization as an authorized tenant in Crown's facility. Moreover, "[f]or purposes of communications site rights-of-way or uses, facility means the building, tower, and *related incidental structures or improvements* authorized under the terms of the

grant or lease." (43 CFR § 2801.5 [emphasis added].) Because all of Sprint's equipment on the Communications Site, particularly the Alamosa Cabinets, were related and incidental structures and improvements, they were part of the BLM-authorized facility and did not require separate authorizations. Defendants' actions are arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

g. Moreover, under the 2005 Regulations, Sprint would have needed a separate authorization only if it owned a building, equipment shelter, or tower on the Communications Site. (*See* 43 CFR § 2806.36(b).) The Alamosa Cabinets do not amount to a "building," "equipment shelter," or "tower." Thus, Sprint did not need a separate authorization for the Alamosa Cabinets. Defendants' actions are arbitrary, capricious, an abuse of discretion, contrary to law, and unsupported by substantial evidence.

h. BLM had an obligation to forward to the IBLA a complete administrative record, including all original documentation. BLM forwarded the IBLA an incomplete Administrative Record, which was missing the Alamosa Sublease and the Approved Communications Site Plan. BLM's failure to prepare and forward a complete administrative record, and BLM's failure to consider all the relevant materials in making its decision below, is arbitrary, capricious, an

abuse of discretion, procedurally improper, contrary to law, and demonstrates that the Trespass Decision was unsupported by substantial evidence.

i. BLM's failure to name the Prime Lease holder in the Trespass Decision, without any explanation or justification, when the Prime Lease holder had allowed Sprint to place its equipment on the Communications Site is arbitrary, capricious, an abuse of discretion, and contrary to law.

j. The administrative record does not disclose how BLM calculated rental amounts and trespass penalties. Neither the Trespass Decision, nor the bills for collection, nor the administrative record include any calculations, valuation data, or any other facts, evidence, or explanation supporting's BLM calculations. Defendants' actions are therefore arbitrary, capricious, and abuse of discretion, contrary to law, procedurally improper, and unsupported by substantial evidence.

k. Defendants erred in the administrative proceedings in that they were time-barred under 28 U.S.C. § 2415(a) from seeking trespass fines, penalties, back rent or other relief for the period more than six years before the issuance of the Trespass Decision.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this court issue an order:

A. Setting aside the challenged portion of the IBLA decision in *Sprint Corporation*, 186 IBLA 132 (2015), and remanding to the IBLA with directions that it reverse BLM's Trespass Decision in full;

B. Declaring that Sprint is authorized to the use the Communications Site and is not in trespass on the Communications Site;

C. Declaring that Defendant's application of 43 CFR § 2806.36(b) so as to collect two different rental payments for the same use of the Communications Site violates FLPMA;

D. Enjoining the Defendants from finding Sprint in trespass or imposing further trespass fines and penalties on Sprint for its use of the Communication Site;

E. Awarding Sprint its fees and costs incurred in connection with this action; and

F. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Christopher M. Loveland*
CHRISTOPHER M. LOVELAND
(D.C. Bar No. 473969)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com

S. KEITH GARNER
(*pro hac vice pending*)
ALEXANDER L. MERRITT
(*pro hac vice pending*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
kgarner@sheppardmullin.com
amerritt@sheppardmullin.com

Dated: October 4, 2016

*Attorneys for* Sprint Corporation